## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER BLAKESLEE, Individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>PHC, INC., BRUCE A. SHEAR, DONALD E. ROBAR, DOUGLAS J. SMITH, HOWARD W. PHILLIPS, WILLIAM F. GRIECO, DAVID E. DANGERFIELD, ACADIA HEALTHCARE COMPANY, INC., and ACADIA MERGER SUB, LLC,<br><br>Defendants. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Peter Blakeslee ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.      This is a shareholder class action brought by Plaintiff on behalf of holders of the common stock of PHC, Inc. d/b/a Pioneer Behavioral Health  ("Pioneer" or "Company") to enjoin the acquisition of the publicly owned shares of Pioneer common stock by Acadia Healthcare Company, Inc. ("Acadia") and Acadia Merger Sub, LLC ("Merger Sub"), as detailed herein ("Proposed Transaction").

2.      On May 24, 2011, Pioneer and Acadia jointly announced that they had entered into a definitive agreement ("Merger Agreement").  Pursuant to the terms of the Proposed Transaction, at the effective time of the merger, each share of Pioneer's Class A Common Stock outstanding immediately prior to the effective time (other than any shares held by dissenting stockholders) will be converted into and become exchangeable for one-quarter (¼) of one share of Acadia Common Stock. Thus, upon completion of the merger, Acadia stockholders will own approximately 77.5% of the combined company, while Pioneer stockholders will only own approximately 22.5%.

3.      In facilitating the acquisition of Pioneer by Acadia for grossly inadequate consideration and through a flawed process, each of the defendants breached and/or aided the other defendants' breaches of their fiduciary duties. For example, Acadia bought the support of the Board (including CEO and Chairman Bruce Shear) by agreeing to pay them (as holders of approximately 93% of Pioneer's Class B Common Stock) $5 million in cash in exchange for voting agreements whereby they have irrevocably agreed to vote in favor of the Proposed Transaction. Moreover, all of the outstanding stock options and all of the outstanding warrants to purchase Pioneer's common stock will be assumed by Acadia in connection with the Proposed Transaction.

4.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' (as defined herein) violations of their fiduciary duties.

## PARTIES

5.      Plaintiff is, and at all relevant times was, a continuous stockholder of defendant Pioneer.  Plaintiff is a citizen of Arkansas.

6.      Pioneer is a Massachusetts corporation with its headquarters located at 200 Lake Street, Suite 102, Peabody, Massachusetts 01960.

7.      Defendant Bruce A. Shear has served as President, CEO, and Chairman of Pioneer since 1980.  According to Pioneer's Form 10-K filed on September 24, 2010, Mr. Shear "is in control of the Company since he is entitled to elect and replace a majority of the Board of Directors. Bruce Shear and his affiliates own and control 93.1% of the Class B Common Stock, which elects four of the six members of the Board of Directors. Bruce Shear can establish, maintain and control business policy and decisions by virtue of his control of the election of the majority of the members of the board of directors."  Upon information and belief, Mr. Shear is a citizen of Massachusetts.

8.      Defendant Donald E. Robar has served as a director of Pioneer since 1985 and as the Treasurer from February 1996 to April 2000. Mr. Robar serves a member of the Audit Committee, the Compensation Committee, and the Nominating and Corporate Governance Committee. According to the Company's October 27, 2010 14A, Mr. Robar has 185,000 stock options outstanding.  Upon information and belief, Mr. Robar is a citizen of Massachusetts.

9.      Defendant Douglas J. Smith has served as a director of Pioneer since March 2010. Upon information and belief, Mr. Smith is a citizen of Nebraska.

10.      Defendant Howard W. Phillips has served as a director of Pioneer since August 27, 1996 and has been employed by the Company in public relations since August 1, 1995. According

to the Company's October 27, 2010 14A, Mr. Phillips has 127,500 stock options outstanding. Upon information and belief, Mr. Phillips is a citizen of Massachusetts.

11.     Defendant William F. Grieco has served as a director of Pioneer since February 18, 1997. Mr. Grieco serves a member of the Audit Committee, the Compensation Committee, and the Nominating and Corporate Governance Committee. According to the Company's October 27, 2010 14A, Mr. Grieco has 187,000 stock options outstanding.  Upon information and belief, Mr. Grieco is a citizen of Massachusetts.

12.     Defendant David E. Dangerfield has served as a director of Pioneer since December 2001. Mr. Dangerfield serves a member of the Audit Committee and the Nominating and Corporate Governance Committee. According to the Company's October 27, 2010 14A, Mr. Dangerfield has 127,500 stock options outstanding.  Upon information and belief, Mr. Dangerfield is a citizen of Utah.

13.     Defendants Shear, Robar, Smith, Phillips, Grieco, and Dangerfield are collectively referred to hereinafter as the "Individual Defendants."

14.     Defendant Acadia, a Delaware Corporation, was founded by Waud Capital Partners, a leading middle-market private equity investment firm with approximately $1 billion under management. Acadia provides psychiatric and chemical dependency services to its patients in a variety of settings, including inpatient psychiatric hospitals, residential treatment centers, outpatient clinics and therapeutic school-based programs.

15.     Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Acadia, formed solely for the purpose of entering into the Merger Agreement and

consummating the Proposed Transaction. Upon completion of the Proposed Transaction, Merger Sub will merge with and into Pioneer and Pioneer will cease to exist as a separate corporate entity.

16.     Collectively, Pioneer, the Individual Defendants, Acadia, and Merger Sub are referred to herein as the "Defendants."

## JURISDICTION AND VENUE

17.     The Court has jurisdiction under 28. U.S.C. § 1332 because there is complete diversity between the parties and the matter in controversy exceeds the sum or value of $75,000.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more of the defendants, including Pioneer, either resides or maintains executive offices in the District and a substantial portion of the transactions and wrongs that are the subject of this complaint occurred in the District.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of Pioneer common stock who are being and will be harmed by Defendants' actions described below ("Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

20.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. As of May 3, 2011 there were 18,738,618 shares of Pioneer Class A common stock issued and outstanding. The actual number of public shareholders of Pioneer will be ascertained through discovery.

b.     There are questions of law and fact that are common to the Class, including

the following:

      i)      whether the Individual Defendants have breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

      ii)      whether the Individual Defendants have breached their fiduciary duty to  obtain the best price available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction; and

      iii)      whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

      c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

      d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

      e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

      f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought

herein with respect to the Class as a whole.

<u>**FURTHER SUBSTANTIVE ALLEGATIONS**</u>

**A.**     <u>**Background**</u>

21.     Pioneer is a national healthcare company providing behavioral health services in five states, including substance abuse treatment facilities in Utah and Virginia, and inpatient and outpatient psychiatric facilities in Michigan, Pennsylvania, and Nevada. The Company also offers internet and telephonic-based referral services that includes employee assistance programs and critical incident services. Contracted services with government agencies, national insurance companies, and major transportation and gaming companies cover more than one million individuals. Pioneer helps people gain and maintain physical, spiritual and emotional health through delivering the highest quality, most culturally responsive and compassionate behavioral health care programs and services.

22.     On May 10, 2011, Pioneer announced financial results for the third fiscal quarter ended March 31, 2011. The Company reported total net revenues from continuing operations for the three months ended March 31, 2011 increased 14.2% to $15.5 million compared to $13.5 million for the three months ended March 31, 2010. Net patient care revenues increased 10.8% to $14.1 million for the three months ended March 31, 2011 from $12.7 million for the three months ended March 31, 2010. This is primarily due to an overall increase in census at Seven Hills Hospital, Highland Ridge and Harbor Oaks facilities. Contract support services revenue provided by Wellplace increased 66.1% to $1.4 million for the three months ended March 31, 2011 compared to $839,000 for the three months ended March 31, 2010. This increase is due to expansion of the Wayne County call center contract in December 2010, which increased services

provided and payment under the contract.  Income from operations was $530,000 for the fiscal

third quarter of 2011 compared to $781,000 in the same period in 2010. This decrease was

primarily related to a legal settlement. Income before taxes was $364,000 for the three-month

period ended March 31, 2011 compared to $758,000 in the same period in 2010. Net income

applicable to common shareholders was $65,000 for the fiscal third quarter of 2011, or $0.00 per

basic and diluted share, compared to net income of $469,000 or $0.02 per basic and diluted share,

in the fiscal third quarter of 2010. The decrease was primarily related to the legal settlement and

401(k) non-operating expense. Mr. Shear commented on the results:

> This represented the Company's ninth consecutive profitable quarter. . . . We again
> generated strong operating results, which were marked by year-over-year revenue
> growth and continued profitability due to an improvement in patient mix and
> increased census. Patient census was up at Seven Hills Behavioral Institute, and the
> Highland Ridge and Harbor Oaks facilities. Seven Hills was profitable throughout
> the third quarter and is scheduled shortly for a five-bed expansion. In addition, a
> rate increase, effective March 1, 2011, from a major customer in Las Vegas, will
> generate an additional $2 million of annualized revenue going forward. . . .
> Subsequent to the end of the quarter, we conducted a grand opening of our recently
> licensed Renaissance Recovery facility, a 24-bed residential program located in
> Detroit. It is designed to provide behavioral treatment to chemically impaired
> adolescents, ages 12-17. Our marketing efforts have been well received and due to
> this initial success, we expect that Renaissance Recovery will add an additional $3
> million in annualized revenue.

    23.    For the nine months ended March 31, 2011, total net revenues increased 15.7% to

$45.2 million compared to $39.0 million in the same period in 2010. Net patient care revenues

increased 15.1% to $42.0 million for the nine months ended March 31, 2011 compared to $36.5

million in the same period in 2010. Contract support services increased 23% in the nine months

ended March 31, 2011 to $3.2 million from $2.6 million in the nine months ended March 31,

2010. Income from operations increased 51.1% to $2.5 million compared to income from

operations of $1.7 million in the same period in fiscal 2010. Net income applicable to common shareholders was up 27% to $1.2 million for the nine months ended March 31, 2011, or $0.06 per basic and diluted share compared to net income of $981,000, or $0.05, per share, for the same period in 2010. As of March 31, 2011, the Company had cash and cash equivalents of $2.8 million compared to $4.5 million as of June 30, 2010. Stockholders' equity improved to $18.5 million as of March 31, 2011 from $17.3 million as of June 30, 2010. Mr. Shear commented on the results:

> We incurred several one-time charges in the quarter that reduced our operating and net income. These included the above-mentioned legal settlement, start up expenses at our recently opened Renaissance Recovery facility and a one-time charge related to our 401(k) plan. Absent these charges, adjusted net income before taxes would have been $1.2 million, which is 58% ahead of last year's same quarter and is coupled with continued solid top line growth. EBITDA for the nine months was $3.4 million.

**B.**     **The Proposed Transaction**

24.     On May 24, 2011, Acadia and Pioneer issued a joint press release announcing the Proposed Transaction:

> PEABODY, Mass. and FRANKLIN, Tenn., May 24, 2011 /PRNewswire via COMTEX/ -- Pioneer, Inc., d/b/a Pioneer Behavioral Health (NYSE Amex: Pioneer), and Acadia Healthcare Company, Inc. today announced the signing of a definitive merger agreement. Upon the completion of the merger, Acadia stockholders will own approximately 77.5% of the combined company, and Pioneer stockholders will own approximately 22.5% of the combined company. Acadia intends to file a registration statement on Form S-4 with the Securities and Exchange Commission in connection with the transaction. Effective with the approval of the merger, the corporate headquarters will be in Franklin, Tennessee, and the combined company will do business under the name Pioneer Behavioral Health. Acadia intends to apply for listing of the combined company's common stock to be issued in the merger on the NASDAQ stock market. Joey Jacobs, the Chairman and Chief Executive Officer of Acadia, will become the Chairman and Chief Executive Officer of the combined company. Bruce Shear, President & CEO of Pioneer, will become the Executive Vice Chairman and a member of the Board

of Directors of the combined company.

The merger will bring together Acadia's 19 behavioral health facilities, which, with approximately 1,700 beds in 13 states, produce annual revenues of approximately $260 million, with Pioneer's five inpatient facilities with approximately 270 beds in four states. In addition, Pioneer's internet and telephonic-based referral services, which include employee assistance programs and critical incident services, provide contracted services covering more than one million individuals. Pioneer's revenues for the trailing 12 months ended March 31, 2011 were $59 million. On March 16, 2011, Pioneer announced that it has entered into a definitive agreement to acquire MeadowWood Behavioral Health.

Joey Jacobs, Chairman & Chief Executive Officer of Acadia, commented, "This merger with Pioneer will represent a significant expansion of our current revenues, facilities and beds and take us into four new states. In addition, access to the public markets will position the combined company to continue acting on attractive opportunities to expand our business through acquisition in the highly fragmented behavioral health industry. The management teams of the combined company are highly experienced in completing and integrating such transactions, as well as in producing on-going organic growth within acquired facilities. Based on the continuing opportunities we see in the market, our extensive record of success and our solid financial position as a combined company, we are confident of our prospects for further growth."

Bruce A. Shear, President & CEO of Pioneer, added, "We are pleased with this agreement to join forces with the Acadia team. The Acadia management team has a demonstrated record of producing high quality care for patients and their families, which aligns perfectly with our clinical mission. The combined senior management teams will further improve both companies [sic] capabilities for growth during this exciting time in our industry. In addition, this transaction will enable our stockholders to participate with a management team that has an unparalleled history of producing long-term profitable growth in the behavioral health industry. We are confident that this transaction represents a great opportunity for Pioneer."

The merger agreement has been approved by the boards of directors of both companies. Consummation of the transaction is subject to various conditions, including approval of the stockholders of Pioneer. Certain officers and directors of Pioneer have executed voting agreements under which they have committed to vote their shares of Pioneer in favor of the transaction. The transaction is expected to be completed in late summer of 2011. The transaction will be a stock for stock exchange except for payments to Pioneer shareholders for fractional shares and $5 million of merger consideration payable to Class B holders of Pioneer's privately held securities. We anticipate that, after refinancing existing indebtedness of both

companies, payment of the merger consideration to the Class B holders, payment of a dividend to the equity holders of Acadia prior to the merger, and payment of fees and expenses relating to the transaction, the combined company will have pro forma net funded indebtedness of approximately $285 million.

In connection with the transaction, Jefferies & Company, Inc. acted as exclusive financial advisor and Arent Fox LLP acted as legal advisor to Pioneer. Kirkland & Ellis LLP served as legal advisor to Acadia and Jefferies Finance LLC provided financing commitments to Acadia to support the transaction.

25.    As 93% owners of Pioneer Class B stock,[1] the Board will receive $5 million in cash (which is a benefit that is not being provided to the public Class A shareholders). In exchange, the Company's directors and officers have entered into voting agreements whereby they irrevocably agreed to vote their shares in favor of the Proposed Transaction. The Merger Agreement provides that:

> The only votes of the holders of any class of capital stock of Pioneer necessary to approve this Agreement is the affirmative vote of holders of at least (i) two-thirds of the outstanding Pioneer Class A Common Stock and Pioneer Class B Common Stock entitled to vote, voting together as a single class, with the holders of Pioneer Class A Common Stock having one vote per share and the holders of Pioneer Class B Common Stock having five votes per share, (ii) two-thirds of the outstanding Pioneer Class A Common Stock entitled to vote, voting as a single class, and (iii) two-thirds of the outstanding Pioneer Class B Common Stock entitled to vote, voting as a single class.

As a result of the voting agreements entered into with the Board, conditions (i) and (iii) have already been met.

C.    **The Unfair Price**

26.    The consideration offered in the Proposed Transaction is grossly inadequate. For example, as set forth above, the Company has recently performed well, and its future outlook is

---

[1] Pioneer Class B Common Stock is entitled to five votes per share as opposed to Class A Common Stock, which is entitled to one vote per share.

very promising. Pioneer, if properly exposed to the market for corporate control, would bring a price materially in excess of the amount offered in the Proposed Transaction.

**D.**   **Deal Protections**

27.   Despite the unfair price, the Merger Agreement has a number of provisions that make it more difficult for another buyer to purchase the Company.

28.   Specifically, if the Company terminates the Proposed Transaction because of a superior proposal, Section 8.02 of the Merger Agreement states that Pioneer must pay Acadia $3 million (which represents approximately 4.2% of the transaction value).

29.   Furthermore, Section 6.04 of the Merger Agreement prohibits the Company and its agents from soliciting additional bids for the Company.

30.   Section 6.04 of the Merger Agreement also provides that the Board may only respond to an unsolicited takeover bid if failing to enter into discussions with a potential acquirer would be inconsistent with the directors' fiduciary duties. The Company also must notify Acadia of the terms of any offer to purchase the Company. Acadia then has "matching rights," which require Pioneer to negotiate with Acadia to make any modifications to the Merger Agreement so that any competing proposal would no longer be considered superior.

**FIRST CAUSE OF ACTION**

**(Against the Individual Defendants for Breach of Fiduciary Duties)**

31.   Plaintiff repeats and realleges each allegation set forth herein.

32.   The Individual Defendants have violated fiduciary duties owed to public shareholders of Pioneer.

33.   By the acts, transactions and courses of conduct alleged herein, the Individual

Defendants have failed to obtain for Pioneer's public shareholders the highest value available for Pioneer in the marketplace.

34.     As demonstrated by the allegations above, the Individual Defendants breached their fiduciary duties owed to the shareholders of Pioneer because they failed to take steps to maximize the value of Pioneer to its public shareholders in a change of control transaction.

35.     As a result of the actions of defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive the highest available value for their equity interest in Pioneer. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

36.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury, which the Individual Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### (Against Pioneer, Acadia, and Merger Sub for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty

37.     Plaintiff repeats and realleges each allegation set forth herein.

38.     Pioneer, Acadia, and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Pioneer's public shareholders, and has participated in such breaches of fiduciary duties.

39.     Pioneer, Acadia, and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Pioneer, Acadia, and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

40.     Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best available terms for shareholders;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E.     Awarding compensatory damages in favor of Plaintiff against all Defendants for all losses and damages suffered as a result of Defendants' wrongdoing alleged herein, in an amount to be determined at trial, together with interest thereon;

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and experts' fees; and

      G.    Granting such other and further equitable relief as this Court may deem just and proper.

Dated: June 13, 2011                    **WHATLEY DRAKE & KALLAS, LLC**

                                      /s/ Patrick J. Sheehan
                                      Patrick J. Sheehan
                                      60 State Street
                                      Seventh Floor
                                      Boston, MA 02109
                                      Tel. 617-573-5118
                                      Fax. 617-573-5090

                                      **BROWER PIVEN**
                                        **A Professional Corporation**
                                      David A.P. Brower
                                      Brian C. Kerr
                                      488 Madison Avenue
                                      New York, NY 10022
                                      Tel. 212-501-9000
                                      Fax. 212-501-0300