UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
In re:                              )
PHC, INC. SHAREHOLDER LITIGATION    )   Civil Action No. 11-11049-GAO
_____)
PETER BLAKESLEE, individually and on behalf )
of all others similarly situated,   )
                    Plaintiff,      )
                                    )
v.                                  )
                                    )
PHC, INC., BRUCE A. SHEAR, DONALD E. )
ROBAR, DOUGLAS J. SMITH, HOWARD W.  )
PHILLIPS, WILLIAM F. GRIECO, DAVID E. )
DANGERFIELD, ACADIA HEALTHCARE      )
COMPANY INC., and ACADIA MERGER     )
SUB, LLC,                           )
                    Defendants.     )
_____)   CONSOLIDATED
_____
MAZ PARTNERS LP, individually and on behalf )
of all others similarly situated,   )
                    Plaintiff,      )
                                    )
v.                                  )
                                    )
BRUCE A. SHEAR, DAVID E. DANGERFIELD, )
WILLIAM F. GRIECO, HOWARD W. PHILLIPS, )
DONALD E. ROBAR, DOUGLAS J. SMITH,  )
PHC, INC., ACADIA HEALTHCARE        )
COMPANY INC., and ACADIA MERGER     )
SUB, LLC,                           )
                    Defendants.     )
_____)

OPINION AND ORDER
March 30, 2012

O'TOOLE, D.J.

The plaintiffs bring these similar and consolidated actions against PHC, Inc., Acadia Healthcare Company Inc. ("Acadia"), Acadia Merger Sub, LLC, and several individual

executives, Bruce Shear, David Dangerfield, William Grieco, Howard Phillips, Donald Robar, and Douglas Smith ("Individual Defendants"). The Amended Complaints allege claims of breaches of fiduciary duties against PHC and the Individual Defendants. The plaintiffs also allege violations of Section 14(a) of the Securities Exchange Act of 1934 against PHC and the Individual Defendants. Finally, the plaintiffs allege that defendants Acadia and Acadia Merger Sub, LLC, aided and abetted the breaches of fiduciary duties. The defendants moved to dismiss the Amended Complaints.

**I.**     **Background**

The complaints allege the following: On May 24, 2011, PHC announced that it had entered into an agreement to merge with Acadia and Acadia Merger Sub, LLC, a wholly-owned subsidiary of Acadia. After the merger, PHC would cease to exist and Acadia stockholders would own 77.5% of the new company and PHC's stockholders would own 22.5%. PHC shareholders include both Class A shareholders and Class B shareholders, the latter having enhanced voting rights under PHC's corporate charter. In the merger, each Class A share would be converted into and become exchangeable for one quarter of one share of Acadia common stock. Class B shares would be converted into and become exchangeable for one quarter of one share of Acadia common stock plus cash consideration totaling $5,000,000. Additionally, defendants Shear and Grieco, both Class B shareholders, would have seats on Acadia's new board of directors. Finally, all outstanding PHC stock options and all outstanding warrants to purchase PHC common stock would be assumed by Acadia and a $90 million cash dividend would be paid to Acadia shareholders prior to the merger.

A hearing was held on several pending motions, including the motions to dismiss the complaints, on October 19, 2011. A week later, on October 26, 2011, PHC's shareholders voted in favor of the proposed merger with Acadia. The merger was formally consummated on November 1, 2011, and each share of PHC common stock was exchanged for one-quarter share of Acadia stock.

The Amended Complaints allege that the defendants have breached their fiduciary duties by abusing control of PHC to secure cash consideration for Class B shareholders and securing positions for board members in the new company at the expense of the Class A shareholders. Additionally, the plaintiffs allege that the defendants failed to take all necessary steps to maximize the consideration the PHC shareholders would receive, agreed to the merger through an unfair process that favored the majority shareholder, Shear, and failed to consider the company's growth prospects in computing its value.

## II. Claims Against PHC and the Individual Defendants

### A. Direct v. Derivative Actions

The defendants move to dismiss these claims on the grounds that they are derivative in nature and the plaintiffs failed to follow the procedures for initiating a shareholder derivative suit, as required by Chapter 156D, § 7.42 of the Massachusetts General Laws. Massachusetts requires that shareholders make a written demand on a corporation to take suitable action before bringing suit. Id. This universal demand requirement applies to all derivative actions, without exception. Forsythe v. Sun Life Fin., Inc., 417 F. Supp. 2d 100, 110 (D. Mass. 1996). The defendants argue that the derivative claims brought by the plaintiffs must be dismissed for failure to make a written demand pursuant to 156D. The plaintiffs argue their claims are direct, not derivative, and thus not subject to the demand requirement.

3

In determining whether a claim is direct or derivative, the Court must apply the law of the corporation's state of incorporation. Kamen v. Kemper Fin. Servs., 500 U.S. 90, 97 (1991). Under Massachusetts law, a claim based on "a duty owed to a corporation, not to the individual stockholders, is properly characterized as derivative not direct." Halebian v. Berv, 590 F.3d 195, 204-05 (2d Cir. 2009). The determination is made by analyzing the source of the claim of right itself. If the right flows from a breach of duty owed by the defendant to the corporation itself, the harm to the investors flows through the corporation and is derivative. Blasberg v. Oxbow Power Corp., 934 F. Supp. 21, 26 (D. Mass. 1996). For example, if a shareholder alleges "mismanagement of funds, embezzlement or breach of fiduciary duty, resulting in diminution of value of corporate stock or assets," the claim is derivative. Id. Thus, if the corporation ultimately suffers the injury, the shareholders suffer indirectly. That is, they suffer as stockholders of an injured corporation. Id. In a successful derivative suit, the corporation would directly receive the relief to restore its financial status, and the shareholders would indirectly benefit from a restored stock price or the improved financial health of the corporation. Id.

Conversely, direct actions are those that flow from a breach of duty owed directly to the individual shareholders rather than the corporate entity. Id. This injury must be distinct from that of other shareholders or a "wrong involving one of his or her contractual rights as a shareholder, such as the right to vote." Lapidus v. Hecht, 232 F.3d 679, 683 (9th Cir. 2000). In short, if the right flows from a breach of duty to the plaintiff, rather than to the corporate entity, the claim is direct. For example, if individual investors were misled or somehow defrauded in the purchase of shares of the corporation, the claim would be direct. Id. Similarly, the claim would be direct where the shareholders were harmed to increase a corporation's assets or benefit the corporation in some way. Steagall v. Ladner, 394 F. Supp. 2d 358, 365 (D. Mass. 2005). In a direct claim, the

damages would be paid not to the corporation, but to individual investors to compensate for the breach of duty. Id.

Here, the plaintiffs assert breaches of fiduciary duty in respect to the fairness of the proposed merger and the disparate treatment of Class A and Class B shareholders. The plaintiffs allege that the Individual Defendants deliberately negotiated and structured this merger agreement to secure themselves, as Class B shareholders, cash consideration and positions in the future company, at the expense of Class A shareholders. These claims are direct in nature. The injury does not flow through the corporation. The Class A shareholders are being wronged by a deal that unduly favors the Class B shareholders, not the corporation. The corporation is not entitled to relief, because Class A shareholders alone suffered the injury. See Stegall, 394 F. Supp. 2d at 364-65 (discussing Strougo v. Bassini, 282 F.3d 162 (2nd Cir. 2002)). If the plaintiffs are to prevail in this case, damages would be awarded to the individual Class A shareholders to compensate them for their individual losses, not the corporation. See Blasberg, 934 F. Supp. at 26. For these reasons, the motion to dismiss these claims must be denied.

B.    Business Judgment Rule

The defendants argue that the business judgment rule, Massachusetts General Laws chapter 156D, § 8.30, is a complete defense to all the allegations in the complaints. This rule protects directors and officers of a corporation from liability for conduct that has been undertaken in good faith and with reasonable care in the best interests of the corporation. Halebian, 931 N.E. 2d at 986. To prove that directors are not entitled to the protections of the rule, a plaintiff must allege facts that establish bad faith, unreasonableness, or lack of investigation. Harhen v. Brown, 730 N.E. 2d 859, (Mass. 2000).

The plaintiffs argue that the business judgment rule is inapplicable in light of the facts, which establish bad faith and self-dealing by the defendants. Specifically, plaintiffs allege that the defendants did not have an independent financial advisor, did not have a special committee or independent committee to represent the interests of public shareholders, Shear stood on both sides of the transaction, the defendants approved a transaction favoring one class of shareholders over another, and never attempted to "shop" PHC to obtain the highest possible price. Accepting all allegations in the Complaint as true, the plaintiffs have adequately pled facts to overcome the defense established by the business judgment rule.

### C. Disclosure Violations

Plaintiff Blakeslee also originally claimed that the proxy statement for the merger vote was deceptive and omitted material information. The proxy statement initially addressed, however, was only a preliminary version. The finalized proxy statement was filed with the SEC on September 27, 2011, after months of review and revision. In a letter to the Court, the defendants explained that the finalized version of the proxy statement "reflects numerous material changes that address or obviate the 'disclosure violations' alleged in Plaintiff's Amended Complaint." (Defs.' October 5, 2011 Letter (11-11099 dkt. no. 70).) Since Blakeslee's Complaint does not allege claims arising from the finalized proxy, Count I of his Complaint is dismissed without prejudice.

### D. Appraisal Remedy

The defendants argue that the plaintiff shareholders are limited to an exclusive statutory remedy of appraisal, available to dissenting shareholders pursuant to Part 13 of Massachusetts General Laws chapter 156D. Under that statute, a shareholder is entitled to receive "fair value" for their shares if he objects to certain fundamental corporate transactions. Mass. Gen. Laws ch.

156D, § 13.02(a). This is an exclusive remedy, unless the shareholder can demonstrate that the transaction is unlawful, fraudulent, or violative of fiduciary duties. Coggins v. New Eng. Patriots Football Club, Inc., 492 N.E.2d 1112, 1118 (Mass. 1986); see also Mass. Gen. Laws ch. 156D, § 13.02, cmt. 3.

Appraisal does not provide complete relief to the plaintiffs in this case. The plaintiffs argue that the allegations in the Complaints are not about stock value, but the unlawful conduct of the defendants. These allegations, which allege self-dealing, inadequate disclosures, and breach of fiduciary duty establish that, at least at this stage of the litigation, appraisal is not the exclusive remedy available to the plaintiffs.

### III. Claims Against PHC

Defendants argue that the plaintiffs have not asserted a cognizable claim against defendant PHC for breach of fiduciary duty. As a corporation, PHC itself owes no duty to its shareholders under Massachusetts law. Howe v. Bank for Intern. Settlements, 194 F. Supp. 2d 6, 28 (D. Mass. 2002); see also Merola v. Exergen Corp., 668 N.E.2d 351, 353 n. 3 (Mass. 1996). Thus, the plaintiffs' claims against PHC itself must be dismissed.

### IV. Claims Against Acadia

Finally, the plaintiffs brought claims against Acadia and Acadia Merger Sub for aiding and abetting breaches of fiduciary duties. The plaintiffs claim Acadia substantially assisted the breach of fiduciary duties by paying a $5 million premium for PHC Class B shares that served to enrich Shear, despite the fact that Acadia knew this sum was in excess of the actual value of the shares. To state a claim for aiding and abetting a breach, a plaintiff must sufficiently plead: (1) a party breached its fiduciary duty; (2) the defendant knew of the breach; and (3) the defendant actively participated in, substantially assisted, or encouraged the breach to such a degree that the

defendant could not reasonably be held to have acted in good faith. <u>Arcidi v. Nat'l Ass'n of Gov't Emps., Inc.</u>, 856 N.E.2d 167, 174 (Mass. 2006).

Here, the plaintiffs have adequately alleged these three elements. Given the fact-based nature of this inquiry, discovery is necessary to determine the validity of these claims.

## **V.** **Conclusion**

The motions to dismiss filed by PHC and the individual defendants are GRANTED only to the extent that the claims against the corporation itself are dismissed and is otherwise DENIED. The Motion to Dismiss the Blakeslee Complaint (11-11049 dkt. no. 35) is GRANTED as to Count I and DENIED as to Counts II and III. The Motion to Dismiss the MAZ Complaint (11-11099 dkt. No. 33) is DENIED.

Acadia's Motion to Dismiss the Blakeslee Complaint (11-11049 dkt. no. 33) and its Motion to Dismiss the MAZ Compliant (11-11099 dkt. no. 39) are both DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge