UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
MAZ PARTNERS LP,                       )
Individually and on Behalf of          )
Others Similarly Situated,             )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          Civil Action
                                       )          No. 11-11049-PBS
                                       )
BRUCE SHEAR, et al.,                   )
                                       )
                    Defendants.        )
                                       )
_____)

**MEMORANDUM AND ORDER**

January 14, 2016

Saris, C.J.

**INTRODUCTION**

In this proposed class action, the plaintiff, MAZ Partners
LP (MAZ), alleges that the directors of PHC, Inc. (PHC) breached
their fiduciary duty by approving inadequate compensation for
Class A shareholders through a flawed process in connection with
the merger with Acadia Healthcare, Inc. (Acadia). The plaintiff
contends that the proxy statement mailed to PHC shareholders
omitted material information necessary for shareholders to make

1

an adequately informed decision.[1] It also contends that Acadia aided and abetted this breach. MAZ, which voted against the merger, has moved to certify a class of all shareholders who held PHC Class A stock prior to the merger, regardless of whether they voted for or against it.[2]

Opposing class certification, the defendants argue that MAZ is not a typical or adequate class representative under Rule 23(a) for the Class A shareholders who voted for the merger, and that MAZ lacks standing to be a class representative.

After hearing, the plaintiff's motion to certify a class of all Class A shareholders (Docket No. 161) is **DENIED**. However, the

---

[1] The Second Amended Complaint of the plaintiff MAZ does not include a violation of section 14(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 14a-9. The claim involving the preliminary proxy statement brought by plaintiff Blakeslee in a consolidated case was dismissed without prejudice at an earlier stage of the proceedings. See In re PHC, Inc. S'holder Litig., No. 11-cv-11049, 2012 WL 1195995, at *3 (D. Mass. Mar. 30, 2012). The Court denied MAZ's motion for leave to amend to add a section 14(a) claim filed after remand from the First Circuit and the close of discovery. See Docket No. 176.

[2] MAZ's proposed class definition is: "All Class A stockholders of PHC, Inc., d/b/a Pioneer Behavioral Health, who held their Class A shares immediately prior to the effective time of the merger between PHC and Acadia Healthcare Company, Inc. and whose shares were converted in the merger, except Defendants and any person, firm, trust, corporation, or other entity related to, or affiliated with, any of the Defendants." Docket No. 161 at 1.

Court **ALLOWS** the motion to certify a class of all Class A
shareholders who voted against the merger or abstained.[3]

## FACTUAL BACKGROUND

The facts below are taken from the record, and are
undisputed except where stated.

PHC was a publicly traded behavioral healthcare company
organized under Massachusetts law. MAZ is a partnership that
owned over 100,000 shares of stock in PHC. PHC had two classes
of common stock. Holders of Class A stock were entitled to one
vote per share. Class B stock entitled holders to five votes per
share. MAZ had Class A stock.

PHC's board consisted of six directors. Bruce Shear served
as a director, chairman of the board, and chief executive
officer of PHC, and held ninety-three percent of PHC's
outstanding Class B shares and approximately eight percent of
its Class A shares. Combined, Shear controlled approximately
twenty percent of the total voting rights for all PHC shares.
Class A shareholders elected two out of six board members and
Class B shareholders elected the other four directors. Because

---

[3] In conjunction with this motion for class certification, both
parties fully briefed and argued cross-motions for summary
judgment. The Court used the summary judgment record to analyze
the class certification issues and will rule on summary judgment
later.

Shear held ninety-three percent of the Class B stock, he
personally had the power to elect four out of the six directors
to the PHC board. Other than Shear, none of the other directors
held Class B stock.

In February 2011, Shear and Acadia CEO Joey Jacobs began
meeting to discuss a possible merger of the two companies. The
two CEOs agreed on a stock-for-stock merger where PHC
shareholders would own 22.5% and Acadia shareholders would own
the remaining 77.5% of the newly merged corporation's stock. The
Class B shareholders would receive a pro rata share of an
additional five million dollars. As the holder of ninety-three
percent of the outstanding Class B shares, Shear would receive
approximately $4.7 million of the additional consideration. The
two CEOs also agreed that Shear would appoint two directors on
Acadia's board and serve as a corporate executive in post-merger
Acadia.

After Jacobs sent a letter of intent to the PHC board
detailing the agreed upon terms, on March 28, 2011, the board
appointed director William Grieco to serve as the "lead
independent director." Even after this appointment, Shear
maintained an active role in merger negotiations. Grieco and
Shear had a longstanding professional relationship, and Shear
had appointed Grieco to the PHC board. Grieco sought and

eventually secured the second post-merger director position in Acadia.

The PHC board retained Stout Risius Ross, Inc. (SRR) to provide an opinion on the merger's overall fairness. However, the board did not ask SRR to determine the fairness of the additional five-million-dollar consideration for Class B shares. SRR only determined that the share price for Class A shareholders, in the aggregate, was fair, and presented its findings to the board. The five directors, other than Shear, voted unanimously to recommend the merger to the shareholders. Shear abstained from the board vote.

Acadia and PHC signed the merger agreement on May 23, 2011. In June 2011, after the merger's announcement, MAZ filed suit to enjoin the merger, which it did not press. On September 27, 2011, PHC disseminated its Final Proxy Statement to the PHC shareholders that disclosed the details of the merger. The Proxy was nearly 500 pages long. It is disputed whether the Proxy omitted material information.

Merger approval required a two-thirds super-majority vote of (1) Class A voting stock alone, (2) Class B voting stock alone, and (3) Class A and B voting stock combined. Together, the directors held a total of 24.8% of PHC's outstanding voting power. On October 26, 2011, the PHC shareholders present at the

meeting voted in favor of the merger, with 88.7% of Class A shares and 99.9% of Class B shares voting for the merger. Approximately twenty-nine percent of total PHC shares either voted against the merger or abstained from the vote. Prior to merger consummation, there was a payment of a ninety-million-dollar cash dividend to the equity holders of Acadia. On November 1, 2011, the merger was fully consummated and PHC's shares were automatically converted to Acadia shares. The plaintiff did not seek the remedy of appraisal pursuant to M.G.L. ch. 156D, § 13.02(a). MAZ sold its shares in January 2012 at a profit.

## DISCUSSION

### I.   Standing[4]

The defendants argue that MAZ lacks standing to pursue its claims because it benefited from the merger as a result of the dramatic value increase in Acadia shares post-merger. The defendants point out that, as of September 2013, Acadia shares

---

[4] The trial court presiding over the proceedings prior to appeal granted summary judgment in favor of the defendants, finding that the plaintiff had suffered no injury as a consequence of the conversion of PHC shares into Acadia shares at the time of the merger, and therefore, either lacked standing or proof of an essential element of its claims. Docket No. 121. The First Circuit reversed on the ground that the plaintiff should have been afforded the opportunity to conduct additional discovery. See In re PHC, Inc. S'holder Litig., 762 F.3d 138, 145 (1st Cir. 2014).

had increased in value by 400%. The plaintiff responds that it does have Article III standing because it was injured by the inadequate percentage of Acadia's shares it received. In other words, if MAZ had received 26% of the post-merger shares, rather than 22.5%, as well as a cut of the five-million-dollar sweetener for Class B shareholders, it would have been richer.

"The constitutional prerequisites for Article III standing are satisfied so long as a plaintiff colorably alleges an actual injury that is both traceable to the defendant's conduct and redressable by a favorable decision." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). A shareholder challenging a merger sustains "a cognizable injury in fact at the time the merger was approved." In re Celera Corp. S'holder Litig., 59 A.3d 418, 430 (Del. 2012) (holding that a shareholder which sold its stock on the public market several days before the merger was actually consummated had standing as a class representative). To have standing, "the plaintiff must have been a stockholder at the time the terms of the merger were agreed upon because it is the terms of the merger, rather than the technicality of its consummation, which are challenged." In re

Beatrice Cos., Litig., Nos. 155 and 156, 1987 WL 36708, at *3 (Del. Feb. 20, 1987).

Here, the plaintiff held stock both at the times the merger was approved and consummated, and has sufficiently alleged that it was harmed when the defendants breached their fiduciary duty by approving inadequate merger compensation. That MAZ benefited from the merger does not defeat standing so long as it can prove that it would have received greater compensation if there were no breach of fiduciary duty. The plaintiff has alleged a concrete injury sufficient for Article III standing.

## II.   **Rule 23 Standard**

A class may be certified pursuant to Rule 23 only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to the four prerequisites of Rule 23(a) discussed above, a court must also find that at least one of the three alternate requirements of Rule 23(b) is satisfied. Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).

The plaintiff seeks to certify the class pursuant to Rule 23(b)(1) or (b)(3).[5] An action may be maintained only if the court also finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Id. (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982)). Certification is proper only if this Court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Falcon, 457 U.S. at 161.

### III. **Rule 23(a) Requirements**

#### a. Numerosity

The plaintiff estimates that there were 651 holders of record for PHC Class A stock, and approximately twenty-nine percent of those shares either abstained or voted against the

---

[5] Since I have certified the class under Rule 23(b)(3), I will not address (b)(1).

9

merger (188 holders). Many holders of record, like brokerage
houses, actually held PHC stock for numerous customers. Courts
have generally found that a class size of forty or more
individuals will satisfy the numerosity requirement. George v.
Nat'l. Water Main Cleaning Co., 286 F.R.D. 168, 173 (D. Mass.
2012). The defendants do not put forth any evidence countering
the plaintiff's showing of numerosity. This element has been
satisfied.

### b. Commonality

"Rule 23(a)'s requirement of commonality is a low bar, and
courts have generally given it a permissive application." In re
New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6,
19 (1st Cir. 2008). Commonality necessitates only the existence
of a "single issue common to all members of the class."
Natchitoches Parish Hosp. Serv. Dist. V. Tyco Int'l, Ltd., 247
F.R.D. 253, 264 (D. Mass. 2008) (emphasis in original). MAZ has
put forth several common issues of law and fact, including
whether the directors breached their fiduciary duty, whether
Acadia aided and abetted any breach, and whether Shear was a

controlling shareholder. These common issues are sufficient to satisfy this requirement.

### c. Typicality

The plaintiff argues that it is typical of all Class A shareholders who owned PHC stock prior to the merger because all shareholders were harmed by the defendants' breach of fiduciary duty. The defendants respond that the plaintiff is not typical because it lacks Article III standing and is subject to the individual, unique defense of acquiescence. The defendants highlight the fact that MAZ had already decided to liquidate its holdings in PHC before the merger was announced.

Class certification is appropriate only where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Supreme Court has stated:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Falcon, 457 U.S. at 157 n.13. The typicality investigation "properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on

which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597-98 (3d Cir. 2009) (expressing concern that the class representative was not sufficiently similar to class members because it was unclear how many members signed releases or covenants not to sue as the class representative had). The purpose of the typicality requirement is to ensure that the "class representative's interests and incentives will be generally aligned with those of the class as a whole." Id. at 599. "The representative plaintiff satisf[ies] the typicality requirement when [its] injuries arise from the same events or course of conduct as do the injuries of the class, and when plaintiff's claims and those of the class are based on the same legal theory." DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 100 (D. Mass. 2010). "Rule 23(a)(3) may have independent significance when it is used to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class . . . ." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1764 (3d ed. 2015).

Courts have held that potential class members should be excluded based on lack of typicality if the defenses against the

potential members would be atypical of their defenses against the named plaintiffs. See In re Smart Tech, Inc. S'holder Litig., 295 F.R.D. 50, 60 (S.D.N.Y. 2013) (holding the named plaintiff lacked typicality because the defendants' defense against the proposed class members "would be atypical of any defense they could assert against plaintiff"); see also Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch., 455 F. Supp. 2d 1286, 1294 (D.N.M. 2006) (holding "conflict is likely to be present if the members of the proposed class are subject to the defense of failure to exhaust administrative remedies, while the class representatives are not"); cf. DeRosa, 694 F. Supp. 2d at 100 ("Both typicality and adequacy may be defeated where the class representatives are subject to unique defenses which threaten to become the focus of the litigation.").

The defendants contend that MAZ acquiesced in the merger when it sold its Acadia shares in January 2012 at a profit as part of its pre-merger decision to liquidate its stock, thereby disqualifying it from challenging the merger's fairness. The defendants also argue that the Class A shareholders, who voted for the merger, acquiesced in it and are barred from seeking recovery. MAZ responds that selling shares post-merger does not implicate the acquiescence doctrine, and even those shareholders

who voted for the merger did not acquiesce because they were not fully informed by the Proxy.

An analysis of the acquiescence doctrine is necessary to determine whether the defense of acquiescence is similarly applicable to these two groups of shareholders. Under Massachusetts law, a shareholder may be estopped from challenging a merger if he voted in favor of the merger based on a proxy statement that was not materially misleading. Pavlidis v. New England Patriots Football Club, Inc., 675 F. Supp. 696, 698 (D. Mass. 1987) (ruling "a stockholder who joins the majority can hardly complain of the majority's action"). "A stockholder who, with knowledge of the facts, himself has given his consent to, or acquiesced in, acts of the directors or other corporate officers, or of majority stockholders, cannot ordinarily attack such acts afterwards." Id. (quoting 12B W. Fletcher, Cyclopedia of the Law of Private Corporations § 4862 (rev. perm. ed. 1984)). "Shareholders who voted against the merger and did not seek appraisal for their shares cannot be said to have acquiesced in the merger." Id. at 698-99. Additionally, the "shareholders who abstained from the merger vote are in no different a position than those who voted against the merger." Id. at 700 (noting "Massachusetts cases demonstrate that acquiescence is not to be inferred from abstention").

14

However, a stockholder who was not in a position to make an informed decision is not bound by his vote. <u>Sullivan v. First Mass. Fin. Corp.</u>, 569 N.E.2d 814, 818 (Mass. 1991) (ruling "as a consequence of this breach of duty to make full and fair disclosure, the minority stockholders who voted for the reverse stock split were not in a position to make an informed decision and are not bound by their votes"). In light of the sparse Massachusetts case law on point, the parties have relied extensively on Delaware case law to determine the contours of the acquiescence doctrine in the context of a merger. In corporate matters, Massachusetts courts will regularly look to opinions of the Delaware courts as courts "with great experience in such matters." See <u>Coggins v. New England Patriots Football Club, Inc.</u>, 492 N.E.2d 1112, 1116 (Mass. 1986).

The defendants rely heavily on the Delaware Supreme Court's opinion in <u>Bershad v. Curtiss-Wright Corp.</u>, 535 A.2d 840, 842 (Del. 1987) to support their position that, when MAZ sold its PHC shares for a profit post-merger, it acquiesced in the merger. The Delaware Supreme Court held that "an informed minority shareholder, who either votes in favor of a merger or accepts the benefits of the transaction cannot thereafter attack the fairness of the merger price." <u>Id.</u> Delaware courts have generally declined to apply the acquiescence doctrine where a

15

shareholder voted against the merger. See In re Best Lock Corp. S'holder Litig., 845 A.2d 1057, 1080 (Del. Ch. 2001) (ruling that "an essential element of acquiescence—that the acquiescing party shows unequivocal approval of the transaction" was lacking in a case where the "plaintiffs tendered their shares while simultaneously pursuing" litigation). "As a matter of simple logic, those who voted against a transaction cannot be said to have acquiesced to it." See In re PNB Holding Co. S'holders Litig., No. CIV.A. 28-N, 2006 WL 2403999, at *21 (Del. Ch. Aug. 18, 2006) (noting that the court "cannot perceive a rational basis for finding that those PNB stockholders who did not cast yes votes acquiesced simply because they accepted the Merger consideration"). The Delaware courts have also held that the acquiescence doctrine does not apply in squeeze-out mergers involving a controlling shareholder where minority shareholders were "battered into accepting unfair merger consideration." See, e.g., Gesoff v. IIC Indus., Inc., 902 A.2d 1130, 1143 n.89 (Del. Ch. 2006). Delaware courts have held, however, that shareholders who vote for a merger, if fully informed, effectively acquiesce and are barred from challenging the merger. See In re PNB, 2006 WL 2403999, at *1 (holding that "those stockholders who voted for the Merger are barred from recovery" because the directors "disclosed all material facts in connection with the Merger").

16

Here, when the merger was announced in May 2011, MAZ filed suit within one month seeking an injunction to halt the merger. At the time of the merger vote, the plaintiff held approximately 100,000 Class A shares and voted all of those shares against the merger. After merger consummation, MAZ's PHC shares were automatically converted to Acadia shares without MAZ taking any action. Therefore, under Massachusetts case law, even though MAZ sold its Acadia shares in January 2012, it did not acquiesce in the merger and may challenge its fairness.

However, the acquiescence defense is much stronger against the other members of the proposed class who voted for the merger. In the typicality analysis, the Court must consider evidence that the overwhelming supermajority of shareholders voted for the merger. "The fact that minority shareholders voted in favor of the merger is not fatal to their possible inclusion in a class challenging said merger, but . . . the percentage of prospective class members who voted in favor of a merger is a factor to be considered in making the typicality determination." TBK Partners v. Chomeau, 104 F.R.D. 127, 131 (E.D. Mo. 1985) (finding no typicality where eighty-seven percent of the proposed class voted in favor of the merger).

Another factor this Court must consider is the contention that shareholders who voted for the merger were not fully

informed by the Proxy. In claiming that the shareholders were not fully informed, the plaintiff has relied on several omissions in the Proxy. MAZ first contends that the Proxy misleadingly implied that William Grieco had had certain powers as the "lead independent director" that he did not possess. MAZ next asserts that the Proxy omits that Grieco failed to disclose that he was a front-runner for the post-merger director position in Acadia when he was appointed "lead independent director." MAZ also argues that the Proxy did not adequately explain how SRR determined the relative values of PHC and Acadia or what impact the ninety-million-dollar dividend, issued to Acadia shareholders, had on that value determination. MAZ points out that the Proxy failed to state the basis for the five-million-dollar payment to Class B shareholders. See Docket No. 188, Ex. 5, at 18-19.

The plaintiff contends that these alleged material omissions are sufficient to demonstrate that the shareholders were so poorly informed that the acquiescence doctrine will not bar them from the class. MAZ relies on In re Bluegreen Corp. S'holder Litig., No. 502011-ca-018111, at *6 (Fla. Cir. Ct. Dec. 18, 2013), where the court granted class certification for all members of the proposed class of shareholders regardless of whether they voted for or against the cash-out merger. The

court's reasoning was that, under Florida law, at the class certification stage, it was not appropriate to rule on the merits of the plaintiff's material misrepresentations in the proxy claims. Id.

Under federal law, however, the Supreme Court directs district courts to conduct a "rigorous analysis" and "probe behind the pleadings before coming to rest on the certification question." Dukes, 131 S. Ct. at 2551. Although the plaintiff points to material omissions in the Proxy in its concise statement of material facts, it fails to adequately address the merits of these claims in its briefs for either summary judgment or class certification beyond mere conclusory statements that the shareholders were not fully informed by the Proxy.

I am not persuaded that, on the merits, the plaintiff has a strong enough argument on this theory. For example, the Proxy did adequately disclose that Grieco would assume a post-merger director position on Acadia's board and that Shear actively participated in merger negotiations after Grieco was appointed "lead independent director." In any event, regardless of how this dispute over whether the shareholders were fully informed by the Proxy plays out in a full summary judgment analysis, the shareholders who voted for the merger will have to surmount a significant additional obstacle to achieve a recovery that MAZ

will not. Even though the defendants have asserted the
acquiescence doctrine as a defense against all proposed class
members, the strength of their argument differs dramatically
between those who voted yea and those who voted nay. For this
reason, MAZ is not typical of shareholders who voted for the
merger.[6]

### d. Adequacy

An adequacy showing requires a two-part analysis: "The
moving party must show first that the interests of the
representative party will not conflict with the interests of the
class members, and second, that counsel chosen by the
representative party is qualified, experienced and able to
vigorously conduct the proposed litigation." In re Boston Sci.
Corp. Secs. Litig., 604 F. Supp. 2d 275, 282 (D. Mass. 2009)
(quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st
Cir. 1985)).

Here, the interests of MAZ and the other Class A
shareholders align to maximize their recovery by showing that

---

[6] If, after ruling on the parties' motions for summary judgment,
the Court concludes that the Class A shareholders were not fully
informed based on material omissions in the Proxy, the plaintiff
may ask this Court to revisit the issue of typicality and the
Court may indeed acquiesce. "An order that grants or denies
class certification may be altered or amended before final
judgment." Fed. R. Civ. P. 23(c)(1)(C).

the directors breached their fiduciary duty by agreeing to inadequate compensation. Additionally, the proposed class counsel, Wolf Popper LLP, Berman DeValerio, and Brower Piven, are sufficiently experienced with complex securities litigation to capably represent the certified class. I find the adequacy requirement has been met.

## IV.  **Rule 23(b)(3)**

### a. Predominance

Brandishing Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013), the defendants argue that common issues do not predominate because the plaintiff has failed to produce a model to calculate class-wide damages under Rule 23(b)(3). Specifically, they argue that individualized factual issues are unique to each shareholder regarding (1) why they voted for or against the merger and (2) how to calculate the specific quantum of damages allegedly owed to each shareholder. These concerns are largely premised on a class of shareholders who voted both for and against the merger.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997). The "predominance criterion" is "far more demanding" than the commonality requirement. Id. at 623-24.

Although the predominance analysis imposes a high bar, "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." Smilow, 323 F.3d at 39. "Where common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied, even if individual damages issues remain." Id.

The defendants have gotten too big for their breaches with their argument that this proposed class fails for lack of a class-wide damages model. The Comcast Court reversed a class certification order because the plaintiff's damages model provided for damages for antitrust theories which had been rejected by the trial court. 133 S. Ct. at 1431. "Comcast holds that a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide injury that the suit alleges." Butler v. Sears, Roebuck & Co., 727 F.3d 796, 799 (7th Cir. 2013) (emphasis in original). "[A]t class certification, the damages calculation must reflect the liability theory." In re Nexium Antitrust Litig., 777 F.3d 9, 23 (1st Cir. 2015). However, "it would drive a stake through the heart of the class action device, in cases in which damages were sought . . . to require every member of the class have identical damages." Butler, 727 F.3d at 800-01.

One helpful decision is <u>Fox v. Riverview Realty Partners</u>, where the court certified a class of shareholders under Rule 23(b)(3), based on a damages model where damages could "be mechanically answered on a per share basis from Class members' records of holdings of the B shares." No. 12-C-9350, 2014 WL 1613022, at *5, *13 (N.D. Ill. Apr. 22, 2014). In <u>Fox</u>, the defendant corporate directors, accused of breach of fiduciary duty in connection with a merger, argued that this damages model ran afoul of <u>Comcast</u>. <u>Id.</u> at *5. The plaintiff alleged that "each stockholder was injured identically, proportionate to his number of preferred shares," and the court ruled that "even if these damages come out differently for each plaintiff, such discrepancies do not defeat class certification." <u>Id.</u> at *6.

MAZ has provided an expert report stating:

> The implied PHC equity ownership in the new, combined company ("New Acadia") of approximately 22.5% that was received in the Merger should have been approximately 16.9% higher in order to adequately compensate PHC shareholders. This resulting 26.3% equity ownership interest in New Acadia would have allowed Plaintiff MAZ Partners L.P. and the other PHC Class A shareholders . . . to own an additional 705,000 shares of New Acadia than was received in the merger. The current value of these additional shares approximates $53.2 million.

Expert Report of Matthew R. Morris, Docket No. 192, Ex. 1, at 172. The expert also contends that the additional five-million-dollar payment to Class B shareholders was too high and that, in

the majority of comparable transactions, enhanced voting
stockholders received no additional compensation. These claimed
damages are linked directly to the defendants' alleged breach of
their fiduciary duty, and are common to all potential members of
the class (Class A shareholders who voted against the merger or
abstained). Each class member's share could be determined based
on share ownership at the time of the merger. The fact that
eventual monetary awards may differ does not defeat class
certification because the damages stem from a common injury to
all class members. Because the plaintiff's damages model is
consistent with its liability theory, it does not run afoul of
Comcast, and thus satisfies the predominance requirement of Rule
23(b)(3).

###### b. Superiority

Rule 23(b)(3) requires a class action to be "superior to
other available methods for fairly and efficiently adjudicating
the controversy." Fed. R. Civ. P. 23(b)(3). "In adding
predominance and superiority to the qualification-for-
certification list, the Advisory Committee sought to cover cases
in which a class action would achieve economies of time, effort,
and expense, and promote . . . uniformity of decision as to
persons similarly situated, without sacrificing procedural
fairness or bringing about other undesirable results." Amchem,

24

521 U.S. at 615. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Id. at 617.

The plaintiff has shown that this case is more properly adjudicated as a class action rather than a series of individual lawsuits. While the plaintiff asserts breach of fiduciary duty, this case is similar to securities fraud cases which are particularly suitable for class certification. See Yang v. Odom, 392 F.3d 97, 109 (3d Cir. 2004). This hard-fought case would be too expensive and time-consuming for many individual class member shareholders to litigate.

Based on the foregoing, MAZ has met the requirements for class certification under Rule 23(b)(3).

### ORDER

The plaintiff's motion to certify a class of all Class A shareholders (Docket No. 161) is **DENIED** without prejudice. However, the Court **ALLOWS** the motion to certify a class of all Class A shareholders who voted against the merger or abstained.

Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court certifies the following class for liability and damages:

All Class A shareholders of PHC, Inc., who either
abstained from voting or voted against the PHC-Acadia
merger in the October 26, 2011 shareholder vote, who
held their Class A shares immediately prior to October
26, 2011, and whose shares were converted to Acadia
shares after the effective merger date, except
Defendants and any person, firm, trust, corporation, or
other entity related to, or affiliated with, any of the
Defendants.

The Court appoints MAZ Partners as Class Representative, Wolf

Popper LLP as Plaintiff's Lead Counsel, and the law firms of

Wolf Popper LLP; Berman DeValerio; and Brower Piven, A

Professional Corporation, as Class Counsel.


/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge