UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAZ PARTNERS LP,
Individually and on behalf of
Others Similarly Situated,
    Plaintiff,

        v.        CIVIL ACTION NO. 11-11049-PBS

BRUCE SHEAR, et al.,
    Defendants.

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION TO COMPEL DISCOVERY (#240).

KELLEY, U.S.M.J.

I. INTRODUCTION.

Familiarity with the facts of this case as set out in the District Court's Summary Judgment Order (#258 at 3-7) is presumed. Plaintiff MAZ Partners LP seeks discovery pertaining to investigations conducted by the U.S. Securities and Exchange Commission (SEC) of alleged insider trading based on non-public information concerning the merger that is at the heart of this case. (## 240, 241.) The subjects of the investigations are connected in varying degrees to defendants PHC, Inc. (PHC) and Acadia Healthcare Co. Inc. (Acadia).[1] *Id.* Initially, plaintiff sought to depose the four individuals named in the SEC investigations along with

---

[1] The individuals investigated by the SEC about whom plaintiff seeks discovery are: 1) Donald Robar, a named defendant and PHC board member; 2) Eric E. Shear, brother of defendant Bruce Shear and Director of Business Development at PHC; and 3) Robert A. Hanner and Danny Carpenter, Acadia officers. (#241 at p. 8.) Copies of the SEC settlement orders for each of the four individuals are attached as Exhibits D-G to plaintiff's Declaration (#242) filed in support of this motion. (*See* #242-4-7.)

defendant Bruce Shear[2] and to discover all relevant, non-privileged documents concerning insider information and trading with regard to the named individuals. (#241 at 5, 13.) Plaintiff also asked this court to order defendants to appoint a corporate representative from PHC and Acadia to explain when defendants became aware of the SEC investigations and why defendants faifd to produce information about the investigations pursuant to plaintiff's original discovery request. (#241 at 15-17.)

The court held a hearing on the motion on September 8, 2016. In a letter submitted after the hearing, plaintiff narrowed its requests. (#268).[3] Plaintiff no longer seeks to depose Robert Hanner or Danny Carpenter, the Acadia officers; no longer seeks the appointment of corporate representatives; and has identified more clearly the documents it is seeking. (#268.) Defendants argue that the requested information is both factually and legally irrelevant to the case. (*See* ## 243, 250, 267.)

## II.  FACTS.

Plaintiff served its first request for production of documents on defendants on July 25, 2011. (#241 at 6.) Among other things, plaintiff requested:

> #10 Documents sufficient to identify the benefits received by the Directors and any officers of PHC in connection with the Merger. . .
>
> \*\*\*\*\*
>
> #48 All [d]ocuments concerning any of the Directors' purchases, sales, gifts, grants, options or ownership, either directly, indirectly, or beneficially, of PHC, Acadia, Jefferies, or Jefferies Finance securities of any type or class.
>
> \*\*\*\*\*

---

[2]  Bruce Shear was not the subject of an SEC order and has already been deposed by plaintiff.

[3]  The court invited the parties to submit letters after the hearing if they wished to.

> #50 All [d]ocuments concerning communications between you and any federal, state or local government agency concerning the merger.

(#242-1.) On August 21, 2011, defendants served formal responses to plaintiff's discovery requests and agreed to produce any responsive documents with respect to requests ##10, 48, and 50. (#242-2.) Discovery closed on April 30, 2015, at which point plaintiff believed that it had obtained all relevant documents. (#241 at 3.)

Four months later, on September 4, 2015, the SEC entered orders to cease-and-desist and for sanctions against Donald Robar, Eric Shear, Robert Hanner, and Danny Carpenter with respect to allegations of illicit trades based on non-public information relating to the merger of PHC and Acadia. (##241 at 4; 242-4-7.) Defendants never disclosed any information pertaining to these SEC investigations to plaintiff. (#241 at 4.) On December 24, 2015, plaintiff learned of the SEC investigations. (#241 at 5.) Plaintiff conferred with defendants regarding the investigations; defendants took the position that the material was not germane to the case and refused to disclose anything. Plaintiff notified the court of the dispute and urged the court to withhold its Class Certification and Summary Judgment rulings. To date, no additional material has been disclosed to plaintiff, and the Class Certification and Summary Judgment Orders have been issued. (##234, 258.)

### III. STANDARD OF REVIEW.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "[T]he court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"Federal trial courts enjoy broad discretion in managing the pace of pretrial proceedings, including the timing of discovery." *Vineberg v. Bissonnette*, 548 F.3d 50, 54 (1st Cir. 2008) (citing *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 38 (1st Cir. 2000)). "Rule 16(b) requires that the district court enter a scheduling order within 120 days of service of the complaint. The scheduling order sets the deadlines for subsequent proceedings in the litigation," including discovery. *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004) (citing Fed. R. Civ. P. 16(b)(1)). The Rule recognizes "that the parties will occasionally be unable to meet these deadlines because scheduling order deadlines are established relatively early in the litigation. Therefore, the court may extend a scheduling order deadline on a showing 'of good cause if the [deadline] cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16(b)).  However, "discovery, like all matters of procedure, has ultimate and necessary boundaries, and . . . the discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*, No. cv 13-33S, 2016 WL 4184014, at *7 (D.R.I. June 14, 2016) (internal quotations and citations omitted).

IV. <u>DISCUSSION</u>.

Plaintiff's request for discovery, as set forth in its post-hearing letter (#268), seeks: 1) production of material sufficient to identify the documents requested by the SEC from Donald Robar, Eric Shear, Robert Hanner, and Danny Carpenter; 2) production of all documents produced by Donald Robar, Eric Shear, Robert Hanner, and Danny Carpenter to the SEC in connection with the insider trading inquiries; 3) production of the transcripts of (or any equivalent document memorializing) the depositions or interviews of Donald Robar, Eric Shear, Robert Hanner, and Danny Carpenter taken in connection with insider trading inquiries; 4) two-hour depositions of both Eric Shear and Donald Robar; and 5) plaintiff's right to argue that it may re-depose Bruce Shear in light of new discovery. (#268 at 1-2.)

Plaintiff argues that the discovery sought was encompassed in its original discovery requests. Since Robar was a director, his alleged purchase of shares on behalf of a relative several months prior to the merger could well be covered by those requests.[4] On the other hand, defendants' denial that Robar did anything wrong, their argument that the purchase of the shares was well before the merger, and that it involved a relatively small sum of money, weighs in favor of finding that defendants did not deliberately conceal the materials. On balance, given the advanced age of the case and the fact that a trial date is looming, the court finds that it would not be productive to engage in an involved process to decide whether defendants are at fault for not disclosing the requested information. The court finds that the standard set out in Fed. R. Civ. P. 16(b)(4), whether there is "good cause" to reopen discovery, is the appropriate standard to use

---

[4] The SEC alleged that Robar unlawfully conferred a benefit to a family member by trading on confidential information. Defendants' arguments that request #10, which sought documents identifying the benefits received by directors of PHC in connection with the merger, would not include Robar's tipping and trading on behalf of a relative, are without merit.

here.  Given that plaintiff happened upon the information that there was an SEC investigation after discovery was closed and then diligently sought discovery about it, one cannot fault plaintiff for any delay.  The court thus turns to the question whether the request meets the relevancy and proportionality requirements of R. 26.

In its motion, plaintiff asked the court to extend discovery to all four individuals who were the subjects of SEC orders. However, Robar is the only one who owed a fiduciary duty to the PHC shareholders and whose actions could fall within the scope of plaintiff's original discovery requests.  With respect to the other three individuals investigated by the SEC (Eric Shear, Robert Hanner, and Danny Carpenter), the court finds that plaintiff has not made a sufficient showing to justify extending discovery to matters concerning these individuals.  Thus the court will limit its discovery analysis below to materials that pertain to Robar.

Defendants, in their post-hearing letter (#267), argue that Robar's trade is immaterial as a matter of law because: 1) the value of the trade is miniscule in comparison with the value of the merger; 2) the District Court previously ruled that "there are no disclosure claims in this case because they are duty of care claims that are barred by the exculpatory bylaw;" and 3) the case of *Van de Walle v. Unimation, Inc*, No. 7046, 1991 WL 29303 (Del. Ch. Mar. 7, 1991) applies here, so that there is no "legal nexus" between the alleged trading violation and the underlying breach of fiduciary claim challenging the sufficiency of the merger consideration.  (#267 at 2.)

Defendants insist that the amount in question with respect to the alleged insider trading claims against Robart as stated in the SEC order - $4,617.25 -  is insignificant with respect to the size of the overall merger - well more than $100 million - and is therefore immaterial as a matter law. (*See* #267 at 2.)   Defendants overlook the fact that since there has not been any discovery concerning the alleged insider trading, it is not clear what Robar did.  The SEC settlement orders

"stipulate[] that [they were] made solely for the purpose of resolving an SEC proceeding without admission of any liability or the *truthfulness* of the findings expressed in the [s]ettlement [o]rder[s]." (#243 at 7) (emphasis added). Except for the SEC order and a news article to which plaintiff refers in its Memorandum in Support, (*see* #241 at 9), there is nothing in the record that establishes what happened regarding Robar's alleged misdeeds. Defendants concede for the sake of this motion only, that the allegations in the SEC settlement order are true. (*See* ##250 at 3; 267 at 2 n. 2.) Whether the allegations are true is unknown – Robar could be entirely innocent or could have profited substantially and the SEC chose to limit its findings to the $4,617.25 for the sake of settlement. That is precisely why plaintiffs should be allowed limited discovery on the issue.

      Defendants cite several cases for the proposition that this court has the authority to decide the materiality of evidence as a matter of law. (*See* #243 at 14; #267 at 1-2.) All of the cited cases are factually distinct from this case, as they concern situations where courts already had records that were complete enough for the courts to make findings concerning the relevance and admissibility of evidence.

      Defendants correctly state that Chief Judge Saris, in her Summary Judgment Order, dismissed all disclosure claims pertaining to PHC directors, finding that there was "no evidence of intentional, reckless, or bad faith misconduct." (#258 at 15.) The court went on to find plaintiff's disclosure allegations "at most . . . constitute violations of the duty of care, not the duty of loyalty, and the directors are protected by the exculpation clause for such violations." *Id.* However, the information plaintiff seeks here was not part of the summary judgment record, as plaintiff had not been afforded the opportunity to examine the relevant documents and re-depose Robar on the subject of his alleged insider trading.

Allowance of plaintiff's limited discovery request imposes a modest burden on defendants and affords plaintiff and the court a more complete understanding as to what actually occurred. Once discovery is completed, the parties can argue the evidence's admissibility at trial before the District Court.  In addition, if the evidence warrants it, plaintiff may move for reconsideration of the court's Summary Judgment Order.

Defendants argue that under the case of *Van deWalle v. Unimation, Inc*, No. 7046, 1991 WL 29303 (Del. Ch. Mar. 7, 1991) the court should determine that there is no legal nexus between evidence of insider trading and claims alleging unfair merger practices. (*See* #247 at 4; #250 at 2.)  In *Unimation* minority shareholders of defendant corporation argued that the directors of the corporation violated their fiduciary duties of care and loyalty when they agreed to a merger under terms that were not favorable to the shareholders. *See Unimation*, 1991 WL 29303.  The *Unimation* court, after trial and post-trial briefing on the merits, found all of plaintiff's arguments to be without merit and held in favor of defendants on all counts. *Id*. at *24.

Defendants cite to a footnote in the *Unimation* decision in which the court addressed two specific allegations of insider trading by two named defendants: one by general counsel for defendant and the other by a vice president of defendant corporation.  The court found the allegations failed for lack of evidentiary support, and in dicta, noted that "[e]ven if these transactions were found to constitute an unintended fiduciary violation, no relief can flow from them, because no relief is being sought as a specific consequence of these alleged violations." *Unimation*, 1991 WL 29303, at *14, n.13.  On the basis of this dicta in a footnote defendants argue that this court should hold as a matter of law that there is no legal nexus between the claims at bar and the discovery sought in this motion. (#250 at 2-5.)

Defendants' legal nexus argument is unpersuasive for the same reason as the other case law cited by defendants, because at this juncture, the court has no factual foundation on which to base an opinion as to the relevance of Robar's alleged insider trading.  Assuming for the sake of argument that allegations Robar tipped and traded on insider information are true, those facts potentially bear on his credibility, his impartiality and the propriety of the proxy statement that was sent to the shareholders.

### A. Production of Documents.

Defendants are ordered to produce: 1) material sufficient to identify the documents requested by the SEC from Donald Robar (that is, the SEC's document requests); 2) all documents produced by Donald Robar to the SEC in connection with the insider trading inquiries; and 3) the transcripts (or any equivalent document) of any deposition or interview taken in connection with Donald Robar's insider trading inquiries.

### B. Deposition Requests.

Plaintiff shall be allowed to depose Donald Robar for two hours to question him on the topics of insider information and trading and the SEC's investigation into his actions. The court will reserve decision on plaintiff's right to re-depose Bruce Shear.

### V. CONCLUSION.

For the reasons stated, it is ORDERED that Plaintiff's Motion to Compel Limited Discovery (#240) is GRANTED in part and DENIED in part.

September 15, 2016                    /s/ M. Page Kelley
                                      M. Page Kelley
                                      United States Magistrate Judge