**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                       )
MAZ PARTNERS LP, Individually and      )
on Behalf of Others Similarly          )
Situated,                              )
                                       )
                    Plaintiff,         )        Civil Action
                                       )        No. 11-11049-PBS
v.                                     )
                                       )
BRUCE SHEAR, et al.,                   )
                                       )
                    Defendants.        )
_____        )

### MEMORANDUM AND ORDER

November 21, 2016

Saris, C.J.

### INTRODUCTION

This shareholder class action arises from a corporate merger. This Court assumes familiarity with its prior rulings and the factual record of this case. MAZ Partners LP v. Shear (MAZ I), No. CV 11-11049, 2016 WL 183519 (D. Mass. Jan. 14, 2016) (order on class certification); MAZ Partners LP v. Shear (MAZ II), No. CV 11-11049, 2016 WL 4574640 (D. Mass. Sept. 1, 2016) (order on summary judgment).

Plaintiff MAZ Partners LP ("MAZ") moves to modify this Court's January 14, 2016 order on class certification. The

defendants oppose modification and move to reconsider a portion of this Court's September 1, 2016 order on summary judgment.

For the reasons stated, the defendants' motion for partial reconsideration (Docket No. 285) is **ALLOWED** in part and **DENIED** in part. MAZ's motion to modify (Docket No. 271) is **DENIED**.

**BACKGROUND**

On January 14, 2016, this Court certified a class defined as follows:

> All Class A shareholders of PHC, Inc., who either abstained from voting or voted against the PHC-Acadia merger in the October 26, 2011 shareholder vote, who held their Class A shares immediately prior to October 26, 2011, and whose shares were converted to Acadia shares after the effective merger date, except Defendants and any person, firm, trust, corporation, or other entity related to, or affiliated with, any of the Defendants.

MAZ I, 2016 WL 183519, at *9.

MAZ had sought a broader class definition that also included Class A shareholders who had voted for the merger, but this Court held that MAZ was not typical of such shareholders because those shareholders faced an acquiescence defense that MAZ did not. Id. at *4-6. This Court rejected MAZ's argument that omissions in the proxy made the shareholders who voted for the merger so poorly informed that the acquiescence defense would not apply. Id. at *6. This Court did, however, note that: "If, after ruling on the parties' motions for summary judgment, the Court concludes that the Class A shareholders were not fully

2

informed based on material omissions in the proxy, the plaintiff may ask this Court to revisit the issue of typicality and the Court may indeed acquiesce." Id. at *6 n.6.

On September 1, 2016, this Court stated in its order on summary judgment that there was a triable issue of whether there was a material nondisclosure in the proxy. MAZ II, 2016 WL 4574640, at *5 ("The plaintiff has presented evidence from which a jury could find that the defendants failed to fully inform the shareholders that the SRR fairness opinion did not address the $5 million Class B payment or the $90 million pre-merger dividend. The Final Proxy itself was over 200 pages long and over 500 pages long with attachments. What shareholder is going to wade through the proxy and then jump into the attachments? Even Grieco was confused about the scope of the fairness opinion.").

MAZ moves to modify the order on class certification on the basis that this Court's finding of a triable issue of inadequate disclosure supports an expansion of the class definition to include Class A shareholders who voted for the merger. In response, the defendants move for reconsideration of this Court's statement in the summary judgment order that there is a triable issue of whether the scope of the Stout Risius Ross, Inc. ("SRR") fairness opinion was adequately disclosed. The defendants' motion for reconsideration also asks the Court to

rule as a matter of law that the proxy fully and adequately
disclosed all material facts.

## DISCUSSION

### I.   Disclosure of the Scope of the SRR Fairness Opinion

This Court's summary judgment order found that the proxy
inadequately disclosed the scope of the SRR fairness opinion.
While the fairness opinion was attached in full to the proxy,
this Court was concerned that the proxy itself failed to
adequately disclose the fact that the SRR did not address the
fairness of the $5 million paid directly to Class B Common
stockholders.

The proxy initially stated that SRR was asked to evaluate
the fairness "to the holders of PHC's Class A Common Stock and
Class B Common Stock . . . , of the merger consideration to be
received by such holders (in the aggregate), and to the holders
of PHC's Class A Common Stock, of the merger consideration to be
received by such holders (in the aggregate)." Docket No. 187,
Ex. A, at 2–3. A later portion of the proxy, in bold and italic
font, stated: "Although the PHC board of directors received a
'fairness opinion' with respect to some aspects of the merger
consideration, the opinion is limited and does not address the
'fairness' of all aspects of the merger." Id. at 20. The proxy
then added that "SRR was not requested to opine as to, and its
opinion does not in any manner address . . . the amount of the

4

merger consideration to be paid to holders of PHC's Class B
Common Stock, the amount of any distribution paid to Acadia
stockholders, the allocation of the merger consideration among
the PHC stockholders or the amount per share of the merger
consideration, [or] the amount of the merger consideration paid
to the holders of PHC's Class A Common Stock relative to the
merger consideration paid to the holders of PHC's Class B Common
Stock or relative to the merger consideration paid to all
holders of PHC common stock." Id.

While the language on Pages 2 and 3 of the proxy is opaque
and confusing, the above-quoted disclosure on Page 20 of the
proxy (which was not flagged in the initial briefing) was
adequate to clarify to shareholders that the SRR opinion did not
separately address the fairness of the $5 million merger
compensation.

However, this disclosure does not end the analysis because
MAZ strenuously contends that the proxy improperly failed to
disclose that the Board had no basis whatsoever for opining on
the fairness of the $5 million Class B payment. MAZ argues that
the proxy was misleading because it stated on Page 2 that
"[a]fter careful consideration, the PHC board of directors . . .
determined that the merger agreement is fair to, and in the best
interests of, the stockholders of PHC" while failing to disclose

it had no basis for its opinion that the $5 million Class B payment was fair.

MAZ relies primarily on Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund, 135 S. Ct. 1318 (2015). In Omnicare, a company's registration statement had stated essentially: "[W]e believe we are obeying the law." Id. at 1327. The Supreme Court suggested that if that statement had been made without having consulted a lawyer or if that statement had been made in the face of contrary legal advice, the statement might be misleading through omission. Id. at 1328-29.

However, the Omnicare Court also stated that to succeed in proving a misleading omission through this theory, "the investor cannot just say that the issuer failed to reveal its basis [for an opinion statement]." Id. at 1332. In other words, it is not enough to say in a conclusory fashion that the Board "omitted to state facts necessary to make the statements made not misleading" or that the Board lacked "reasonable grounds for the belief" it expressed. Id. at 1333. Rather, "[t]he investor must identify particular (and material) facts going to the basis for the issuer's opinion -- facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have -- whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." Id. at 1332. In Omnicare, the Court flagged a specific

possible omission: that an attorney had warned the defendant about a particular legal exposure. Id. at 1333. The Court instructed the trial court on remand to examine the attorney's warning, with a focus on the attorney's "status and expertise" and the context of the statements. Id. Omnicare provides the blueprint for this Court's analysis.

As an initial matter, this Court rejects the defendants' argument that the logic of Omnicare does not apply because Omnicare was a case under Section 11 of the Securities Act of 1933, which is not pleaded in this case. Section 11 attaches liability to a registration statement that "omit[s] to state a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). While there is no such statutory definition of materiality in this case, the standard for materiality here similarly allows for an omission of certain facts from corporate disclosures to be material. See MAZ II, 2016 WL 4574640, at *4 (quoting Malpiede v. Townson, 780 A.2d 1075, 1086 (Del. 2001)); see also Rosenblatt v. Getty Oil Co., 493 A.2d 929, 944 (Del. 1985). Also, Omnicare addressed registration statements, which are "formal documents" for which readers "do not, and are right not to, expect opinions contained in those statements to reflect baseless, off-the-cuff judgments, of the kind that an individual might communicate in daily life." Omnicare, 135 S. Ct. at 1330. Proxy statements fit that

description as well. Omnicare's logic can be extended to the context of this case.

The defendants argue that even if the logic of Omnicare applies, a reasonable reader of the proxy would not understand there to be any misleading omission. See Tongue v. Sanofi, 816 F.3d 199, 210 (2d Cir. 2016) ("The core inquiry [under Omnicare] is whether the omitted facts would 'conflict with what a reasonable investor would take from the statement itself.'" (quoting Omnicare, 135 S. Ct. at 1329)). Page 2 of the proxy stated that "[a]fter careful consideration, the PHC board of directors . . . determined that the merger agreement is fair to, and in the best interests of, the stockholders of PHC." Docket No. 187, Ex. A, at 2. In the defendants' view, the proxy did disclose the inquiry the directors made to support their fairness opinion. The defendants point to Page 61 of the proxy:

> The PHC board of directors . . . considered a number of factors in evaluating the proposed payment to the holders of the Class B Common Stock, including the rights of the holders of the Class B Common Stock, the fact that the proposed transaction could not be completed without the approval of the holders of the Class B Common Stock and the opinion of SRR to the PHC board of directors that, from a financial point of view, the merger consideration to be received by the holders of PHC Class A Common Stock (in the aggregate) was fair to such holders and the merger consideration to be received by the holders of all of the PHC common stock (in the aggregate) was fair to such holders.

Id. at 61. Based on this statement, the defendants argue that they did not omit any facts supporting the statement in the proxy that compensation to Class B shareholders as consideration for their losing control rights was fair.

MAZ points to specific facts in the record that were not disclosed in the proxy that suggest that the defendants did not carefully consider the amount of the compensation and lacked a reasoned basis for stating it was fair. MAZ points out that Jefferies, PHC's investment banker, advised against an additional payment to Class B stockholders. MAZ relies on two emails from Jefferies. The first is an email by Dan Decelles of Jefferies on February 5, 2011, telling Bruce Shear that: "We were looking for examples of ma deals where ceo had class b. We just did the Playboy deal and even hef gave up his class b in that deal...... get your captains hat out......." Docket No. 295, Ex. D. The second is an email by Richard Agabs of Jefferies on April 30, 2011, telling Bruce Shear that all classes of common stock must be treated equally. Docket No. 295, Ex. F. The defendants downplay these emails, pointing out that Jefferies was not hired to provide a fairness opinion or a legal opinion, but was just an investment advisor.

With all reasonable inferences drawn in favor of MAZ, a fact-finder could conclude that the investment bankers at Jefferies warned that Class B shareholders in other deals it

handled received no additional compensation. Whether the defendants' statement of opinion in the proxy was therefore misleading is a mixed question of law and fact for a jury. See Pavlidis v. New England Patriots Football Club, Inc., 737 F.2d 1227, 1231 (1st Cir. 1984) ("The materiality issue is 'a mixed question of law and fact' whose determination 'requires delicate assessments . . . [that] are peculiarly ones for the trier of fact.'" (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976)) (alterations in original)).

Whichever conclusion a factfinder may reach, there is no evidence in the record that any misleading opinion in the proxy was intentional, reckless, or made in bad faith. As such, this Court's holding in MAZ II as to director liability remains undisturbed. MAZ II, 2016 WL 4574640, at *5 ("At most, the plaintiff's disclosure allegations constitute violations of the duty of care, not the duty of loyalty, and the directors are protected by the exculpation clause for such violations. Therefore, the Court allows the defendants' motion for summary judgment with respect to the directors' liability for any disclosure violations."). There remains a disputed question of material nondisclosure, but it relates only to the issues of class size and shareholder ratification.

## II.  **Other Allegedly Material Nondisclosures**

MAZ argues that there were other material nondisclosures in the proxy that prevented the shareholders who voted for the merger from being fully informed. The operative complaint contains a long laundry list of such allegedly material nondisclosures. Docket No. 177 at ¶ 155.

At the motion hearing, this Court asked MAZ to identify the main nondisclosures on which it is relying. Apart from the Board's opinion as to fairness discussed above, MAZ identified the following at the hearing and in its supplemental briefing:

1) The proxy failed to disclose that Defendant Donald Robar allegedly tipped and traded on inside information;

2) The proxy failed to disclose a statement from Jefferies, the financial advisor for PHC, suggesting that Class A and Class B had to be treated the same;

3) The proxy failed to disclose that the Acadia CEO introduced Jefferies to PHC; and

4) The proxy failed to adequately disclose Grieco's post-merger employment on Acadia's board.

The parties agree on the standard for materiality of a nondisclosure: whether there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." MAZ II, 2016 WL 4574640, at

11

*4 (quoting Malpiede, 780 A.2d at 1086); see also Rosenblatt, 493 A.2d at 944.

## A.    Alleged Insider Trading by Robar

Robar is a defendant and PHC board member who allegedly tipped a family member to purchase PHC Class A stock in February 2011, resulting in a $4,600 profit to that family member. MAZ argues that because Robar's family member traded before the Board voted on the merger, Robar was inclined to "rubber-stamp" any merger agreement rather than objectively consider the merits of the merger.

The defendants respond that disclosure of this trade was not required because it was not material. The proxy already disclosed that Robar himself held 229,167 shares of Class A stock. Robar's interests were aligned with those of all Class A shareholders at the time of the Board's vote on the merger, and the alleged February 2011 transaction did nothing to change that. There is no substantial likelihood that a reasonable investor would have seen the disclosure of the alleged February 2011 transaction as significantly altering the total mix of available information.

## B.    Jefferies Emails

MAZ contends that the Jefferies emails, described previously in this order, should have been disclosed. Of course, not every negative email or point of view must be disclosed in a

proxy. A "reasonable investor does not expect that <u>every</u> fact known" to the company must be disclosed. <u>Omnicare</u>, 135 S. Ct. at 1329 (pointing out that it is not misleading not to disclose a junior lawyer's minority view even if it turns out to be correct). The Jefferies emails may provide relevant evidence concerning whether the directors knew specific information undercutting the conclusion that the compensation to Class B stockholders was fair. The Court has an insufficient record for determining whether Jefferies' opinion needed to be disclosed.

### C.   Jefferies' Prior Relationship with Acadia CEO

MAZ argues that the proxy improperly failed to disclose that Jefferies was introduced to PHC and Shear by Joey Jacobs, the Acadia CEO, with whom Jefferies had a prior business relationship. Specifically, MAZ points to the fact that Jacobs had done investment banking work with Dan Decelles of Jefferies since 2002 and that the Acadia-PHC merger had the potential of generating millions of dollars in fees for Jefferies.

But the proxy already disclosed the involvement of Jefferies and Jefferies Finance, an affiliate of Jefferies, in the merger. Further, the proxy already disclosed that because of the interested position of Jefferies Finance, the PHC board did not rely on a fairness opinion by Jefferies to justify their approval of the merger. Docket No. 187, Ex. A, at 54 ("Mr. Grieco was further directed to interview, select and engage a

13

financial advisory firm without an interest in the completion of the transaction to evaluate the fairness of the proposed combination from a financial point of view, in light of Jefferies' potential role in providing financing to the combined company."). MAZ does not explain the materiality of any past business relationship between Jacobs and Decelles, and given the information that was already disclosed, this Court finds that further information about Jefferies' prior relationship with Acadia's CEO would not have significantly added to the total mix of available information. See In re Delphi Fin. Grp. S'holder Litig., No. CIV.A. 7144-VCG, 2012 WL 729232, at *18 (Del. Ch. Mar. 6, 2012).

### D.   Grieco Post-Merger Employment with Acadia

In MAZ II, this Court rejected MAZ's argument that the proxy failed to disclose that, at the time the PHC Board appointed Grieco as lead independent director, Grieco had already learned that he was a frontrunner to receive an Acadia Board seat. This Court stated that "in multiple locations, the Final Proxy disclosed Grieco's post-merger Acadia director position." MAZ II, 2016 WL 4574640, at *5.

The defendants argue that while multiple parts of the proxy disclosed Grieco's post-merger Acadia director position, the proxy failed to disclose the timing: that Grieco had learned of his likely board position well in advance of his vote on the

14

merger. The defendants also claim that Grieco did not disclose

his likely post-merger employment to other PHC board members at

the time of the board vote. However, as we noted in MAZ II,

management's expectation of employment with the post-merger

company is commonplace and does not, by itself, establish a

conflict of interest. MAZ II, 2016 WL 4574640, at *6 (citing

Ehrlich v. Phase Forward Inc., 955 N.E.2d 912, 919 (Mass. App.

Ct. 2011)); see also Cinerama, Inc. v. Technicolor, Inc., 663

A.2d 1156, 1170 (Del. 1995). The exact timing of Grieco learning

of his likely post-merger employment was not material.

The defendants rely on two cases that are inapposite. In In

re Atheros Communications, Inc., the court found a disclosure

violation when the proxy stated that, at a particular specified

date, a director "had not had any discussions with [the

acquiring company] regarding the terms of his potential

employment by [the acquiring company]" when in fact that

director had engaged in such discussions. No. CIV.A. 6124-VCN,

2011 WL 864928, at *11 (Del. Ch. Mar. 4, 2011). Similarly, in

Maric Capital Master Fund, Ltd. v. Plato Learning, Inc., the

proxy expressly stated that a company did not negotiate any

terms of post-merger employment with the other company's

management when in fact there had been extended discussions on

the topic. 11 A.3d 1175, 1179 (Del. Ch. 2010). While the proxy

statements in those cases contained affirmatively untrue

statements, the proxy in this case contained no such misrepresentation that would lead to a disclosure violation.

Contrary to this Court's statement in the summary judgment order, the scope of the SRR fairness opinion was adequately disclosed in the proxy. However, there remains a disputed question of whether the Jefferies emails had to be disclosed. In light of the above discussion, this Court **ALLOWS** the motion for partial reconsideration (Docket No. 285) to the extent that the defendants argue that there is no triable issue of whether the scope of the SRR fairness opinion was adequately disclosed. This Court **DENIES** the motion to the extent that the defendants ask the Court to rule as a matter of law that the proxy fully and adequately disclosed all material facts.

## III. **Effect on Shareholder Ratification**

Nondisclosure was relevant to two parts of this Court's September 1, 2016 summary judgment order. The first was the claim that the directors had breached their fiduciary duties. This Court concluded above that any disclosure matter was at most an exculpated breach of the duty of care and not a breach of the duty of loyalty.

The second is what MAZ II referred to as shareholder ratification. The defendants argued that under Mass. Gen. Laws ch. 156D, § 8.31(a), the shareholder vote approving the merger protected them from liability for breaches of the duty of

16

loyalty. This Court's summary judgment order expressed uncertainty about whether the Massachusetts shareholder approval statute applied to this situation, but ultimately did not decide that question because a genuine dispute over whether the shareholder vote was fully informed made it uncertain whether the statute would even apply.

Having received additional briefing on the Massachusetts shareholder approval statute, this Court now holds that the statute does not apply in this context. The statute in question applies to "conflict of interest transactions," which is defined as "a transaction with the corporation in which a director of the corporation has a material direct or indirect interest." Mass. Gen. Laws ch. 156D, § 8.31(a). A director has an indirect interest in a transaction if either "another entity in which he has a material financial interest or in which he is a general partner is a party to the transaction" or "another entity of which he is a director, officer, or trustee or in which he holds another position is a party to the transaction and the transaction is or should be considered by the board of directors of the corporation." Id. § 8.31(b). For such transactions, the statute provides three circumstances in which the transaction "is not voidable by the corporation solely because of the director's interest in the transaction." Id. § 8.31(a).

This statute does not apply to this case. The statute, by its terms, applies to self-dealing transactions in which a corporate fiduciary is on both sides of a transaction. The record does not demonstrate that this merger fits such a definition. PHC's merger with Acadia was not such a transaction because the directors of PHC had no pre-merger interest in Acadia, whether directly or indirectly. No PHC director held a director position or had a financial interest in Acadia prior to the merger. Further, the statute by its terms is only relevant to actions "by the corporation." This suit is not such an action because it is a shareholder class action, not a derivative suit.

The defendants cite a number of cases applying similar shareholder approval statutes from other states in the context of mergers. Those cases are not to the contrary. DCG & T ex rel. Battaglia/Ira v. Knight actually cuts against the defendants' argument because the court in that case noted that the Virginia statute in question "refers to a corporation's (and not a shareholder's) right to void an interested director transaction." 68 F. Supp. 3d 579, 589 (E.D. Va. 2014) (quoting Byelick v. Vivadelli, 79 F. Supp. 2d 610, 628 (E.D. Va. 1999)). As such, the court held that the statute only applied in derivative suits, not shareholder class actions such as the case at hand. See id. A further distinction is that in DCG & T, the merging companies shared overlapping directors, making the

18

merger a self-dealing transaction in which a corporate fiduciary was on both sides of the transaction. Id. at 582–83. A merger with overlapping management fits the statutory definition of a conflict of interest transaction, whereas the merger in this case does not. G & N Aircraft, Inc. v. Boehm is similarly distinguishable. 743 N.E.2d 227 (Ind. 2001). There, the court applied an Indiana statute like the Massachusetts statute at hand to the merger of the corporation with another business owned by a majority shareholder of the corporation. Id. at 238–39. In Camden v. Kaufman, the merger was again between a corporation and another business owned by the director of the corporation. 613 N.W.2d 335, 337 (Mich. Ct. App. 2000) (per curiam). While the defendants cite one case, Wittman v. Crooke, in which the merger was between companies without overlapping management, the state court decision did not inquire into whether the text of the Maryland statute actually applied to such mergers. 707 A.2d 422, 426 (Md. App. Ct. 1998). The other cases cited by the defendants do not involve a challenge to the terms of a merger.

The defendants argue that even if Mass. Gen. Laws ch. 156D, § 8.31(a) does not apply to this situation, their actions are protected by a shareholder approval provision in the PHC company

charter.[1] The charter provision appears to be modeled off Title

8, § 144 of the Delaware General Corporation Law, which is

---

[1]     That provision, titled "Intercompany Transactions," states
the following:

> No contract or transaction between the corporation and one
> or more of its directors or officers, or between the
> corporation and any other organization of which one or more
> of its directors or officers are directors, trustees or
> officers, or in which any of them has any financial or
> other interest, shall be void or voidable, or in any way
> affected, solely for this reason, or solely because the
> director or officer is present at or participates in the
> meeting of the board of directors or committee thereof
> which authorizes, approves or ratifies the contract or
> transaction, or solely because his or their votes are
> counted for such purposes, if:
>
> (a) The material facts as to his relationship or interest
> and as to the contract or transaction are disclosed or are
> known to the board of directors or the committee which
> authorizes, approves or ratifies the contract or
> transaction, and the board or committee in good faith
> authorizes, approves or ratifies the contract or
> transaction by the affirmative vote of a majority of the
> disinterested directors, even though the disinterested
> directors be less than a quorum; or
>
> (b) The material facts as to his relationship or interest
> and as to the contract or transaction are disclosed or are
> known to the stockholders entitled to vote there on, and
> the contract or transaction is specifically authorized,
> approved or ratified in good faith by vote of the
> stockholders; or
>
> (c) The contract or transaction is fair as to the
> corporation as of the time it is authorized, approved or
> ratified by the board of directors, a committee thereof, or
> the stockholders.
>
> Common or interested directors may be counted in
> determining the presence of a quorum at a meeting of the
> board of directors or of a committee thereof which
> authorizes, approves or ratifies the contract or
> transaction. No director or officer of the corporation

similar to Mass. Gen. Laws ch. 156D, § 8.31. The charter provision does not apply for the same reason that the Massachusetts statute does not apply: the parties have not identified any transaction in which any of the PHC directors was on the other side of PHC, either directly or indirectly. Accordingly, the defendants are not protected by shareholder approval either through Mass. Gen. Laws ch. 156D, § 8.31(a) or the PHC charter provision.

## IV.  **Effect on Class Certification Order**

MAZ seeks to expand the class definition to cover all Class A shareholders, regardless of how they voted on the merger. In the initial class certification order, this Court defined the class more narrowly, excluding Class A shareholders who had voted for the merger. This Court's reasoning was that MAZ is not typical of Class A shareholders who voted for the merger because shareholders who voted for the merger were susceptible to an acquiescence defense to which MAZ was not. While the shareholders who voted "yes" could defeat the acquiescence

---

shall be liable or accountable to the corporation or to any of its stockholders or creditors or to any other person, either for any loss to the corporation or to any other person or for any gains or profits realized by such director or officer, by reason of any contract or transaction as to which clauses (a), (b) or (c) above are applicable.

Docket No. 187, Ex. B, at 8-9.

defense by showing that they were not fully informed by the proxy, this Court's judgment at the time was that there was not a "strong enough argument" for nondisclosure. MAZ I, 2016 WL 183519, at *6.

MAZ argues that the typicality determination should be revisited in light of the summary judgment order, in which this Court found a triable issue of fact of whether the defendants failed to fully inform the shareholders of the scope of the SRR fairness opinion. MAZ argues that because the Class A shareholders who voted for the merger may defeat acquiescence on the basis of that nondisclosure, MAZ can represent those shareholders. While this Court has now reconsidered that portion of the summary judgment order, it has also found a separate but related triable issue of material nondisclosure.

However, to say that there is a triable question of material nondisclosure is different from deciding conclusively at the summary judgment stage that there was insufficient disclosure. The latter might arguably wipe out an acquiescence defense against the "yes" voters and put all the Class A shareholders on equal footing heading into the trial. But the former does not because the "yes" voters would still have to prove inadequate disclosure at trial while MAZ would not. Typicality does not exist where a certain defense is applicable to some potential class members but not to the named plaintiff,

and that defense will consume a significant portion of the plaintiff's time and energy at trial. See MAZ I, 2016 WL 183519, at *5. That is precisely the case here, where thorny questions of disclosure have already sidetracked the litigation and threaten to continue doing so at trial.

MAZ responds that it and the other "no" voters still have to prove inadequate disclosure at trial because the defendants will rely on shareholder ratification under Mass. Gen. Laws ch. 156D, § 8.31(a). This Court has concluded above that shareholder ratification, whether under the Massachusetts statute or the corporate charter, does not apply.

MAZ's motion to modify the class certification order (Docket No. 271) is **DENIED** as to inclusion of the "yes" voters.

## V.    Exclusion from Class of Persons with SEC Sanction Orders

MAZ seeks to amend the class to exclude those individuals who entered into Cease-and-Desist and Sanction Orders with the SEC. Those Sanction Orders related to inside information about the PHC-Acadia merger and insider trading in shares of PHC prior to public announcement of the merger. The individuals at issue are (1) Donald E. Robar (defendant and PHC Board Member), (2) Eric E. Shear (defendant Bruce Shear's brother and director of business development at PHC), and (3) Robert A. Hanner (Acadia officer), and (4) Danny E. Carpenter (Acadia officer).

MAZ has stated that this portion of its motion is moot if this Court does not modify the class to include "yes" voters, since the four individuals that MAZ seeks to exclude were "yes" voters. MAZ's motion to modify the class certification order (Docket No. 271) is **DENIED** as to exclusion of the specified individuals.

### ORDER

This Court **ALLOWS** in part and **DENIES** in part the defendants' motion for partial reconsideration of the order on summary judgment (Docket No. 285). This Court **DENIES** MAZ's motion to modify the order on class certification (Docket No. 271).

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge